**No. 20-12107**

In the United States Court of Appeals
for the Eleventh Circuit

INDEPENDENT PARTY OF FLORIDA and
PARTY FOR SOCIALISM AND LIBERATION,
*Plaintiffs/Appellants*,

v.

LAUREL M. LEE,
Florida Secretary of State, in her official capacity,
*Defendant/Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF FLORIDA
CASE NO.: 4:20-cv-00110-MW-MAF

**APPELLEE'S ANSWER BRIEF**

BRADLEY R. MCVAY
*General Counsel*
Florida Bar No.: 79034
Brad.McVay@DOS.MyFlorida.com
ASHLEY E. DAVIS
*Deputy General Counsel*
Florida Bar No.: 48032
Ashley.Davis@DOS.MyFlorida.com

FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 South Bronough Street, Suite 100
Tallahassee, FL 32399
(850) 245-6536 telephone
(850) 245-6127 facsimile

*Counsel for Defendant/Appellee*
*Florida Secretary of State*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned certifies that the Plaintiffs-Appellants' Certificate of Interested Persons in their Initial Brief is correct but incomplete and therefore adds the following interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1:

1. Walker, The Honorable Mark – district court Judge.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, Laurel M. Lee, in her official capacity as Florida Secretary of State ("Secretary"), requests the Court dispense with oral argument because the issues are not novel and time is of the essence.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................1

STATEMENT REGARDING ORAL ARGUMENT ...............................................2

TABLE OF CITATIONS ........................................................................................4

STATEMENT OF JURISDICTION .......................................................................6

STATEMENT OF THE ISSUE ...............................................................................8

STATEMENT OF THE CASE................................................................................10

    I.    FACTS ........................................................................................10

    II.    PROCEDURAL HISTORY ..................................................14

SUMMARY OF THE ARGUMENT ....................................................................15

ARGUMENT .........................................................................................................17

  I.    THE DISTRICT COURT DID NOT ERR IN CONCLUDING ANY BURDEN OF FLORIDA'S ALTERNATIVE ACCESS METHODS IS NOT SEVERE …………………………………………………………….18

  II.    THE DISTRICT COURT DID NOT ERR BY CONCLUDING THE 1% PETITION METHOD WAS NOT RENDERED UNCONSTITUTIONAL BY THE ADDITION OF AN ALTERNATIVE ACCESS METHOD……22

  III.    THE DISTRICT COURT DID NOT ERR IN CONCLUDING THE ALTERNATIVE NATIONAL AFFILIATION METHOD RATIONALLY SERVES FLORIDA'S INTERESTS IN A NATIONAL ELECTION…….24

CONCLUSION......................................................................................................24

CERTIFICATE OF SERVICE .............................................................................29

# TABLE OF CITATIONS

Cases

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ...................................................................... passim

*Burdick v. Takushi*,
504 U.S. 428, 439 (1992).........................................................................23

*De La Fuente*,
278 F. Supp. 3d 1146 (C.D. Cal. 2017) ..................................................20

*Fulani v. Krivanek*,
973 F. 2d 1539 (11th Cir. 1992) .............................................................25

*Green Party of Georgia v. Kemp*,
171 F. Supp. 3d 1340 (N.D. Ga. 2016).......................................16, 21, 24

*Jenness v. Fortson*,
403 U.S. 431 (1971) ................................................................. 15, 22, 26

*Libertarian Party of Florida v. State of Fla.*,
710 F.2d 790 (11th Cir. 1983) ..........................................................19, 20

*Libertarian Party of Ohio v. Blackwell*,
462 F. 3d 579 (6th Cir. 2006) .................................................................21

*Libertarian Party v. District of Columbia*,
768 F. Supp. 2d 174 (D.C. Cir. 2011)......................................................24

*Stein v. Ala. Sec'y of State*,
774 F. 3d 689 (11th Cir. 2014) ................................................................19

*Storer v. Brown*,
415 U.S. 724 (1974) .......................................................................... 20, 23

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997)..................................................................................23

*U.S. Taxpayers of Fla. v. Smith*,

871 F. Supp. 426 (N.D. Fla. 1993), *aff'd*, 51 F. 3d 241 (11th Cir. 1995) ...............19

*Williams v. Rhodes*,
393 U.S. 23 (1968) .......................................................................................25

State Statutes

Fla. Stat. § 97.021 ..........................................................................................9
Fla. Stat. § 99.061 ........................................................................................12
Fla. Stat. § 99.095 ........................................................................................11
Fla. Stat. §105.031 .......................................................................................12

Constitutional Provisions

Fla. Const. art. XI, § 3 ..................................................................................11

## STATEMENT OF JURISDICTION

The district court's subject matter jurisdiction below was based on a challenge under the United States Constitution pursuant to 42 U.S.C. § 1983. Appx 1 at 16, ¶ 4.[1] The order appealed from denied the Plaintiffs-Appellants' Motion for Preliminary Injunction. Appx. 39 & 40. The notice of appeal was filed on June 25, 2020, seventeen (17) days after the order appealed from was entered. *See* Appx. 40 (June 25, 2020). This appeal is therefore timely.

---

[1] Citations are to the Appendix as "Appx. * at **, ¶ ***" where "*" is the tab of the Appendix, "**" is the page of the Appendix, and "***" is the paragraph number, if any. The Supplemental Appendix is cited the same way as "Sup. Appx."

## STANDARD OF REVIEW

The Minor Parties are correct as to the standard of review. Preliminary injunction decisions are reviewed for abuse of discretion. IB at 20. Further, when reviewing ballot access requirements such as the alternatives at issue here, the three step process in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) is used. IB at 20-21.

## STATEMENT OF THE ISSUES

Plaintiffs-Appellants are minor political parties in Florida ("Minor Parties") and raise only two specific alleged errors on appeal in their Statement of the Issues Presented for Review, IB at 10, and in their Summary of the Argument, IB at 22-23, restated by the Secretary as 2 and 3 below. Although not preserved in their Issues and Summary sections, the Minor Parties seem to raise an additional issue in their Argument, IB at 24. To the extent arguments that are not specifically identified by the Minor Parties as points for review even need to be addressed, the Secretary has restated the issue as 1 below.

1.    Whether the district court failed to evaluate both alternatives together in determining the burden and therefore erred by finding the burden was not severe, where there is undisputedly Eleventh Circuit precedent, a history of minor party access in Florida, and a lack of practical barriers to the Minor Parties' access to Florida's presidential ballot.

2.    Whether the district court erred by concluding the 1% petition method, which has concededly been upheld previously, *still* furthers the interests in requiring a showing of a modicum of support prior to ballot placement, where the only change is that Florida created a separate and *additional* method of ballot access that allows parties with support nationally to also participate in presidential elections.

3.    Whether the district court erred by concluding the national affiliation method does not violate the equal protection clause, where the method rationally serves the state's interests by providing an alternative means to demonstrate support *nationally* in order to account for whatever "national interest" there may be in presidential elections as recognized in U.S. Supreme Court precedent.

## STATEMENT OF THE CASE

This action challenges the constitutionality of subsections (4)(a) and (4)(b) of section 103.021, Florida Statutes (2020), which are Florida's alternative methods of ballot access for minor political parties, like Plaintiffs-Appellants ("Minor Parties"). This appeal challenges the district court's order denying the Minor Parties' Motion for Preliminary Injunction.  Appx. 39 (denying Appx. 9).

### I.    FACTS

Minor political parties can access Florida's General Election Ballot and, consequently have their presidential candidate's names printed thereon by *either*: 1) affiliation with a national party; or, 2) by petitions signed by one percent (1%) of the state's electors.  *See* Fla. Stat. § 103.021 (4)(a) (affiliation) and (b) (petition).  For access to the 2020 Ballot, 132,781 signed petitions are needed from the pool of 13,278,100 registered electors.  Minor parties in Florida are those that, among other things, "which on January 1 preceding a primary election do[] not have registered as members 5 percent of the total registered electors of the state." Fla. Stat. § 97.021 (19).

### A. <u>Minor Party Access to Florida's Ballot</u>

As to the affiliation method, four (4) out of the seven (7) minor parties in Florida are affiliated with national parties and may therefore certify their presidential candidates for ballot placement on the 2020 General Election Ballot.  Appx. 1 at ¶¶

10

20-23; Sup. Appx. 34 at 56; IB at 49. Minor parties in Florida have done so in the past with success as well. *See* Appx. 9-1. Since the current alternatives have been in place, ten (10) minor parties accessed Florida's ballot by certifying affiliation in 2012 and four (4) accessed it in 2016. Sup. Appx. 9 at 20 ("*all* minor political parties" in Florida were on the 2012 ballot); Appx. 33 at ¶ 8 & 33-8 (2012 Candidate Listing). Interestingly, Party for Socialism and Liberation was one of those minor parties on the 2012 ballot. Sup. Appx 9 at 34; Appx. 33 at ¶ 8 & 33-8 (2012 Candidate Listing). A many and varied other minor parties have accessed the ballot by affiliation in every presidential election since 2000. *See* Appx. 33 at ¶ 8 & 33-8 (Candidate Listing).[2] In all of those years, the two major parties were also on the ballot, along with some combination of no-party-affiliated (NPA) and write-in candidates. *Id.*

Minor parties and candidates have also accessed Florida's ballot using the petition method, at the same 1% threshold or at a higher, previous threshold. In 1996, a minor party achieved placement on Florida's presidential ballot by either being affiliated with a national party *and* meeting a 3% signature requirement, or

---

[2] From 2000 to 2016: Prohibition Party, Constitution Party, Libertarian Party, Florida Socialist Workers Party, BTP, America's Party of Florida, Party for Socialism and Liberation – Florida, Green Party, Socialist Party of Florida, Ecology Party of Florida, Objectivist Party, Reform Party, The Natural Law Party, Workers World Party, Justice Party of Florida, Peace and Freedom Party.

meeting the same 1% requirement here.[3] Appx. 33 at ¶ 8 & 33-8 (1996 Candidate Listing) (Ross Perot Reform Party); Fla. Stat. § 103.021 (3), (4) (1995). Another minor party that year seems to have done the same. Appx. 33 at ¶ 8 & 33-8 (1996 Candidate Listing) (Harry Browne Libertarian Party).

Florida has the same, alternative 1% petition threshold for statewide candidates to access the ballot as well. Fla. Stat. § 99.095 (2)(a). In 2010, candidate Kendrick Meek successfully attained ballot placement for election to the Office of United States Senate by collecting the requisite petitions from 1% of Florida's voters. Appx. 33 at ¶ 9 & 33-9 (Candidate Listing U.S. Senate 2010).

## B. <u>Petitioning in Florida</u>

Petitioning generally is a regular occurrence in Florida. For the 2020 General Election Ballot, four initiative petition sponsors have successfully attained position for their proposed constitutional amendments by, among other things, collecting signed petitions. Appx. 33 at ¶ 10 (2020 Initiatives). The petition threshold is higher for initiative petitions than for candidates or minor parties. Initiative petition sponsors must collect petitions "signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a

---

[3] We cannot tell from the records which method was actually used, but the point is that each access method available at that time was as difficult *or more* difficult than the current alternative methods.

whole in the last preceding [presidential] election." Fla. Const. art. XI, § 3; Fla. Stat.

§ 100.371. That means that *each* of the four sponsors who attained ballot placement

collected 766,200 signed petitions. Moreover, each signature they collected only

had a 2-year shelf life. Fla. Stat. § 100.371 (11).

Voters also regularly sign candidate petitions. In the qualifying period that

occurred prior to the preliminary hearing below (for U.S. Representative, judicial,

state attorney, and public defender candidates ending on April 24, 2020), *see*

sections 99.061 and 105.031, Florida Statutes, 32 candidates qualified by the petition

method. Appx. 34-1 at ¶ 10.

### C. **The Minor Parties**

The Party for Socialism and Liberation has existed for 12 years, yet has only

683 members. Appx. 33 at ¶¶ 5, 7. Over its 12 years, it has raised a total of only

$6,566 in contributions. Appx. 33 at ¶ 6. The Independent Party has existed for at

least 24 years and has 106,580 members, yet it has raised a total of only about

$19,378 in contributions in the 21-year period of the Divisions' records. Appx. 33

at ¶¶ 2-3, 7.

The Minor Parties have not placed candidates on the ballot in any other race.

There is a dearth of evidence that they even have the internal structure to do so. *See*

Appx. 20-2 (corrected Bach Decl.); Appx. 9-8) (Ellis Decl.). Nor is there evidence

that the Minor Parties engage in any party activity like voter registration or any form

of candidate campaigning. *Id.* Their only party activity seems to be a desire to be on the presidential ballot in Florida.

## II.    PROCEDURAL HISTORY

The Minor Parties initiated this action on February 24, 2020.  Appx. 1.  The Secretary moved to dismiss on March 27, 2020.  Appx. 8.  The Minor Parties responded in opposition on April 10, 2020.  Appx. 15.  The district court denied the motion on June 8, 2020.  Appx. 37.

On April 6, the Minor Parties moved for a preliminary injunction to achieve ballot placement without any showing of a modicum of support.  Sup. Appx. 9.  The Secretary responded in opposition on May 22, 2020.  Sup. Appx. 42.  The Secretary included an affidavit from the Director of the Division of Elections, Appx. 34-1, and a request for judicial notice of election and campaign facts and information, Appx. 33.  The district court subsequently granted judicial notice.  Sup. Appx. B at 99-100. The Minor Parties replied on May 29, 2020.  Sup. Appx. 35. The district court heard the motion for preliminary injunction and denied the same on June 8, 2020.  Appx. 39.  The Minor Parties' appeal of that order followed the same day.  Appx. 40.

## SUMMARY OF THE ARGUMENT

States may undoubtedly require a preliminary showing of a modicum of support before placing a minor political party on the ballot.  *E.g. Jenness v. Fortson*, 403 U.S. 431, 442 (1970).  The district court correctly declined to place the Minor Parties on the ballot without any such showing, concluding that Florida's alternative methods for ballot access are reasonable and nondiscriminatory measures of support, using the concededly correct standard set forth in *Anderson v. Celebrezze*, 460 U.S. 780 (1983).

The Minor Parties argue three points of error in the district court's application of that test they argue require reversal as an abuse of discretion.  First, they argue that the district court failed to evaluate both alternative methods *together* and therefore erred in finding the burden severe.  IB at 24.  The Minor Parties are incorrect because the district court *did* evaluate the methods together and because the entire scheme does not freeze the status quo, the burdens imposed are not severe. Appx. 39 at 238-47.

Second, the Minor Parties argue the district court erred by concluding the 1% petition method, despite it admittedly being upheld, has now been rendered unconstitutional by the addition of the alternative national affiliation method of access that permits access without any showing of support *in Florida*.  IB at 34. They are incorrect because the *addition* of another method of access does not

15

logically restrict access and because that affiliation method rationally accounts for whatever "national interest" there may be in presidential elections. *See Anderson*, 460 U.S. at 781; *Green Party of Ga. v. Georgia*, 551 F. Appx 982, 984 (11th Cir. 2014). Even the Minor Parties argue that the "national interest" must be accounted for. IB 40-43.

Finally, the Minor Parties argue that the affiliation method violates equal protection because it permits minor parties of a national scope to show support differently than those with strictly instate scope. IB at 46. But the Minor Parties have consistently argued that the two are different. IB at 39, 51-52; Sup. Appx. 9 at 31-35; Sup. Appx. 35 at 87-88. Florida's alternative methods therefore allow in-state minor parties to show support by petitioning the voters of this state and minor parties of a national scope to show support by affiliation with a national party as recognized by the FEC. Even the Minor Parties argue that such affiliation "amounts to significant support *outside* of Florida." IB at 39, 50-51.

The district court's interlocutory order was correct and the court in no way erred. The order should therefore be upheld. The Minor Parties' arguments to the contrary are incorrect, illogical, and reject the concept they presented in their Motion for Preliminary Injunction, Sup. Appx. 9 at 15, that the national interest plays a role in presidential elections.

## ARGUMENT

The district court correctly denied the Minor Parties preliminary access to Florida's presidential ballot because they have no likelihood of success on their constitutional attack of Florida's alternative methods to gain such access. The district court used the "balancing test set out in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)," which "controls challenges to ballot access requirements," "includ[ing] "equal protection challenges" to those requirements, in evaluating both of the Minor Parties' challenges. Appx. 39 at 238-50. The Minor Parties agree that is the correct test. IB at 25 ("the Supreme Court has required a type of sliding scale standard of review because states have a duty to regulate elections").

For the reasons in the district court's order, Appx. 39, and the Secretary's Response in Opposition to Motion for Preliminary Injunction, Sup. Appx. 34, Florida's alternative methods do not impose a severe burden and further the well-recognized interests in requiring a preliminary showing of party support before placing that party on the ballot, acknowledging the differences between in-state parties and national parties. None of the Minor Parties' specific points of error require reversal. The interlocutory order on appeal should therefore be upheld for that reason and because the order is correct.

17

## I.   THE DISTRICT COURT DID NOT ERR IN CONCLUDING ANY BURDEN OF FLORIDA'S ALTERNATIVE ACCESS METHODS IS NOT SEVERE

The Minor Parties first argue on appeal that the district court failed to consider Florida's alternative access methods *together* under the *Anderson* test, and for that reason, erred in finding the burden they produce not severe. IB at 24 ("Rather than consider the two regulations within the full statutory context, the court considered the two ballot access [sic] distinctly and independently from each other" in weighing the burden). Each method is an alternative to the other. A minor party need only meet one. Nevertheless, in evaluating the burden on a minor party, the district court analyzed them separately *and together* in order to conclude that the total burden is not severe. Appx. 39 at 239-47.

### A.   <u>The district court correctly determined any burden from Florida's alternative access methods is not severe.</u>

The district court correctly determined any burden from Florida's alternative access methods is not severe because of the Eleventh Circuit precedent, comparison to other state's methods, the history of actual access in Florida, and the lack of practical barriers to access. Appx. 39 at 239-47.

The only evidence of the severity of the burden put forth by the Minor Parties was an alleged cost of $100,000 to hire petition circulators and the lack of desire to affiliate with a national party. *See* Sup. Appx. 34 at 55-58. On the other hand, the district court rightly noted that the Eleventh Circuit has rejected such cost, Appx. 39

18

n. 5 (citing *Stein v. Ala. Sec'y of State*, 774 F. 3d 689, 697 (11th Cir. 2014)), and that the Minor Parties themselves have pointed to the ease with which affiliation has and can occur, *id.* at 243 (citing the Minor Parties' Motion).

The Minor Parties' own evidence indicates that most minor parties in Florida are affiliated with national parties and that other minor parties have also done so in the past with success as well. Since the current alternatives have been in place, as many as ten (10) minor parties accessed Florida's ballot by affiliation. A many and varied other minor parties have accessed the ballot by affiliation in every presidential election since 2000. In all of those years, the two major parties were also on the ballot, along with some combination of no-party-affiliated (NPA) and write-in candidates. Voters have never been short on choice in Florida, even looking at minor party choices alone. The affiliation method does not impose a severe burden.

Nor does the 1% petition method. The Minor Parties' membership numbers, the alleviating factors recognized in *Libertarian Party of Florida v. State of Fla.*, 710 F. 2d 790 (11th Cir. 1983) and *U.S. Taxpayers of Fla. v. Smith*, 871 F. Supp. 426 (N.D. Fla. 1993), *aff'd*, 51 F. 3d 241 (11th Cir. 1995), and the *four* years they have to collect signatures belies any argument to the contrary. *See* Appx. 8 at 33-37. And Minor parties and candidates have actually satisfied Florida's petition method and other, more burdensome petition methods. A candidate has met Florida's same 1% petition method in 2010. Sup. Appx. 34 at 60. Two minor parties

have also met the same, or perhaps higher, percentage threshold in 1996. Appx. 39 at 243; Sup. Appx. 34 at 60. Even the Minor Parties concede that a candidate has met California's 1% threshold that requires a *higher* raw number of petitions. IB at 39; Appx. 39 at 242. Florida's 1% petition method is also well-within the boundaries upheld as not severe. *Storer v. Brown*, 415 U.S. 724, 740 (1974) ("gathering 325,000 signatures in 24 days would not appear to be an impossible burden" or an "impractical undertaking for one who desires to be a candidate for President"); *De La Fuente*, 278 F. Supp. 3d 1146, 1155 (C.D. Cal. 2017) (finding 267,058 signatures in California's 105-day window is not a severe burden), *aff'd* 930 F. 3d 1101 (9th Cir. 2019).

At bottom, a ballot access law imposes a severe burden only if it "*freeze*s the status quo by effectively barring all candidates other than those of the major parties" and does not "provide a realistic means of ballot access." *Libertarian Party of Florida v. State of Fla.*, 710 F.2d 790, 793 (11th Cir. 1983) (emphasis added). Indeed, the "primary concern is with the tendency of ballot access restrictions to limit the field of candidates from which voters might choose." *Anderson*, 460 U.S. at 787 In no way has Florida's alternative access methods limited voters' choice. To the contrary, they have allowed many and varied minor parties to access Florida's ballot in every presidential election. The district court was therefore correct in concluding the methods are not severe together or separate.

20

## B. **The district court _did_ analyze both methods in determining the burden.**

The district court did indeed analyze both methods *together* in determining the burden they may inflict is not severe.  Specifically, the district court evaluated the history of minor party access in Florida under both methods.  Appx. 39 at 243-44.  And because the alternative access methods have not frozen the status quo, like methods that have been found to be severe, the district court correctly concluded that Florida's scheme is not severe.  *Id.*; *Green Party of Georgia v. Kemp*, 171 F. Supp. 3d 1340 (N.D. Ga. 2016) (finding severe because no minor parties accessed the ballot in fifteen years), *aff'd mem.* 674 Fed. Appx. 974, 2017 WL 429257 (11th Cir. 2017); *Libertarian Party of Ohio v. Blackwell*, 462 F. 3d 579 (6th Cir. 2006) (finding severe because ballot monopolized by major parties).

The Minor Parties do not dispute that minor parties and candidates have accessed Florida's ballot using the national affiliation method *and* the petition method.  Indeed, they detail the great extent to which minor parties have accessed Florida's presidential ballot using the affiliation method since 2000, IB at 13-14, and how many more could do so in 2020, IB at 48-49.  They also do not dispute that a statewide candidate gained access to Florida's ballot in 2010 using the same (in substance) 1% petition method.  The Minor Parties merely argue that candidate was not a minor party candidate but rather, the Democratic nominee.  Sup. Appx. 35 at 91.  What the Minor Parties ignore is that the candidate met the 1% petition threshold

to access the *primary* ballot in order to seek that nomination.  The candidate was not the Democratic nominee when petitioning.

The Minor Parties are therefore incorrect in arguing the district court did not evaluate the alternative methods together in order to determine the burden they may inflict is not severe.  The Minor Parties do not argue that even if that is correct, the district court erred in applying lesser scrutiny.  They seem to have conceded below that if the burden is not severe, then the scheme should be upheld.  Sup. Appx. B at 145 (transcript).  The Minor Parties do not argue the contrary on appeal.  *See* IB at 21, 25.  The district court therefore did not err on this point as the Minor Parties argue.

## II.  THE DISTRICT COURT DID NOT ERR BY CONCLUDING THE 1% PETITION METHOD WAS NOT RENDERED UNCONSTITUTIONAL BY THE ADDITION OF AN ALTERNATIVE ACCESS METHOD

The district court correctly concluded that both of Florida's alternative access methods are justified by the interests in requiring a showing of a modicum of support before being placed on the ballot.  Appx. 39 at 247-50.  The interests are well-recognized.  *Id.*; *e.g. Jenness v. Fortson*, 403 U.S. 431, 442 (1970). The Minor Parties do not dispute this.  *See* IB.  Nor do they dispute that Florida's 1% petition method has previously been upheld.  *See* IB.  Rather, they argue only that the 1% petition method is *no longer* justified by those interests because minor parties can

access the ballot by the affiliation method without any showing of support *in Florida*. IB at 35.

But no case limits the well-recognized interests in that way; the Minor Parties certainly have not cited one. To the contrary, the interests are stated broadly in requiring a showing of support as to the minor party or candidate. The purpose being to ensure that the minor party or candidate is not frivolous, *Anderson*, 460 U.S. at 788 n.9, intraparty feuds have been settled, interparty raiding is limited, *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 352 (1997), and the ballot is reserved for "major struggles," *Burdick v. Takushi*, 504 U.S. 428, 439 (1992), to maintain the "integrity of the political process," *Storer v. Brown*, 415 U.S. 724, 731 (1974), among other interests.

The Minor Parties put forth a "national interest" that they purport "diminishe[s]" any interest Florida has because the outcome of a presidential election "will largely be determined by voters beyond the State's boundaries." IB at 41-43; Sup. Appx. 9 at 15. Assuming the election will be so determined, *but* Sup. Appx. 34 at 56, it would not matter at all to the Minor Parties who are strictly in-state parties, or parties seeking only to boost a particular candidate's total vote. Sup. Appx 9 at 34-37; Appx 9-1 at ¶¶ 43-48. The "primary function of elections is to elect candidates" after all, not give minor party voters "satisfaction knowing that he

23

or she has helped to boost the candidate's total." *Libertarian Party v. District of Columbia*, 768 F. Supp. 2d 174, 186 (D.C. Cir. 2011).

Nor are the Minor Parties correct that a "diminishment" of the interests means that a state can only *lessen* the requirement for an instate showing. *See* IB at 41 (alleging the national interest just means "it is always a bit more difficult for a state to justify ballot access regulations"); *see id.* at 42-43 (explaining same). That is not the only way to account for the "different balance" that may be needed. Appx. 39 at 248 citing *Green Party of Ga. v. Georgia*, 551 F. Fed Appx 982, 984 (11th Cir. 2014). And if the election will be determined outside Florida's borders, then it is not improper to gauge support from those voters in some way. Florida has chosen alternative methods that allow minor parties to show the required support in a way that respects their associational interests in being an in-state or national minor party. That choice is valid.

## III. THE DISTRICT COURT DID NOT ERR IN CONCLUDING THE ALTERNATIVE NATIONAL AFFILIATION METHOD RATIONALLY SERVES FLORIDA'S INTERESTS IN A NATIONAL ELECTION

Finally, the Minor Parties argue that the district court erred in concluding the national affiliation method does not violate equal protection because it "failed to discuss equal protection" and "how the distinguishing fact that separates minor parties" for ballot access "is how the parties exercise the fundamental First

Amendment right to freely associate." IB at 46. But the district did undisputedly use the correct standard – whether the access method "rationally serves important state interests" because the burden is "not severe." Appx. 39 at 250; *id.* at 238 (citing *Fulani v. Krivanek*, 973 F. 2d 1539, 1543 (11th Cir. 1992) for adopting the *Anderson* test for equal protection challenges to ballot access laws). And Florida's national affiliation method does indeed rationally serve the interests in presidential elections. The method is not impermissibly discriminatory.

As the Minor Parties have argued, instate minor parties and national parties are fundamentally different, including as to how they have chosen to associate. Florida's alternative methods of access recognize those differences and allow instate parties to show a modicum of *Florida* support and national parties to show a modicum of *national* support, in order to account for whatever "national interest" there may be in presidential elections as recognized in U.S. Supreme Court precedent. *E.g. Anderson v. Celebrezze*, 460 U.S. 780 (1983) ("in the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest").

But not "every minor difference in the application of laws to different groups [is] a violation." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). If a state is not "guilty of invidious discrimination" in recognizing "obvious differences in kind" between major and minor political parties and "providing different routes to the printed

25

ballot," then there can be no discrimination in recognizing the apparent difference between minor parties alleged here and providing different routes to the ballot. *See Jenness v. Fortson*, 403 U.S. 431, 441-42 (1971) (noting that "[s]ometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike").

Again, if the outcome of a presidential election "will largely be determined by voters beyond the State's boundaries" as the Minor Parties have argued, then it is proper to gauge the support a minor party or candidate has outside of Florida. IB at 41; Sup. Appx. 9 at 15). According to the Minor Parties, Florida's definition of a "national party" as being recognized by the FEC, very much does so. Indeed, they argue that recognition "amounts to significant support *outside* of Florida." IB at 39; IB at 50-51. The Minor Parties specifically argue that to attain recognition, the party must place its candidates for president and congress on the ballot, "under the party label, in several states" and be "organized throughout the United States." IB at 50-51; *see also* Appx. 9-1 at ¶ 19); Sup. Appx. 9 at 35. By the Minor Parties' own account then, the district court was correct in concluding that affiliation with such a "national party" was a rational means of showing a modicum of support nationally. Appx. 39 at 247-50.

The district court therefore did not err by concluding the national affiliation method does not violate the equal protection clause, where the method rationally serves all interests at play in national elections.

## CONCLUSION

The district court's order should therefore be upheld.

Respectfully submitted,

/s/ *Ashley E. Davis*
**BRADLEY R. MCVAY**
*General Counsel*
Florida Bar No.: 79034
Brad.McVay@DOS.MyFlorida.com
**ASHLEY E. DAVIS**
*Deputy General Counsel*
Florida Bar No.: 48032
Ashley.Davis@DOS.MyFlorida.com

FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399
Telephone (850) 245-6536
Facsimile (850) 245-6127

*Counsel for Defendant/Appellee*
*Florida Secretary of State*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(7).  The brief contains 4585 words, excluding material that does not count toward page limitations.  The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.


/s/ *Ashley E. Davis*
Attorney

## CERTIFICATE OF SERVICE

I certify that on July 13, 2020, a true and correct copy of this brief was filed electronically through the Court's CM/ECF system generating service upon all counsel of record.  I further certify that on the same day, the foregoing was sent to a print shop, from which seven paper copies will be sent to the Clerk via first-class mail.

/s/ *Ashley E. Davis*
Attorney