APPEAL NO. 20-12107

# IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

INDEPENDENT PARTY OF FLORIDA and
PARTY FOR SOCIALISM AND LIBERATION,

Plaintiffs-Appellants,

versus

LAUREL M. LEE, Florida Secretary of State, in her official capacity,

Defendant-Appellee.

*ON APPEAL FROM PRELIMINARY INJUNCTION ORDER
IN THE U.S. DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
HON. MARK E. WALKER, UNITED STATES DISTRICT JUDGE
DISTRICT COURT CASE NO. 4:20-cv-00110-MW-MAF*

# APPELLANTS' REPLY BRIEF

Daniel J. Treuden, Esquire
THE BERNHOFT LAW FIRM, S.C.
Attorney for Appellants

1402 E. Cesar Chavez Street
Austin, Texas 78702
(512) 582-2100 telephone
djtreuden@bernhoftlaw.com

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The certificates of interested persons submitted in the Opening Brief and Answer Brief are complete.

Dated: July 17, 2020

      /s/ Daniel J. Treuden
Daniel J. Treuden
Wisconsin Bar No. 1052766

THE BERNHOFT LAW FIRM, S.C.
1402 E. Cesar Chavez Street
Austin, Texas 78702
(512) 582-2100 telephone
(512) 373-3159 facsimile
djtreuden@bernhoftlaw.com
*Counsel for Plaintiffs-Appellants*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................... i

TABLE OF CONTENTS ............................................................................ ii

TABLE OF CITATIONS AND AUTHORITIES ..................................... iii

ARGUMENT ............................................................................................... 1

I. No Court has Ever Upheld a Ballot-Access Statute for a Statewide Election Based on the Measure of a Party's or Candidate's National Level of Support in Lieu of Requiring any Showing of a Modicum of Support Within the State ................ 1

II. The Answering Brief Fails to Address the Key Supreme Court *Socialist Workers Party* Decision that Struck Down a Ballot-Access Requirement Because it could not be Justified After Considering the Whole of the State's Election Law Schema and the Public Policy Determinations Made by the Legislature When it Passed that Election Code. ................................................ 9

CERTIFICATE OF COMPLIANCE ....................................................... 13

CERTIFICATE OF SERVICE ................................................................. 14

# TABLE OF CITATIONS AND AUTHORITIES

**Cases**

*Anderson v. Celebrezze*, 460 U.S. 780, 795 (1983).................................... 2

*Illinois State Bd. of Elections v. Socialist Workers Party*,
    440 U.S. 173 (1979) ................................................................. 1, 9, 10

*Libertarian Party of Maine v. Diamond*,
    992 F.2d 365 (1st Cir. 1993)......................................................... 4, 5, 7

*Munro v. Socialist Workers Party*, 479 U.S. 189 (1986) .......................... 3

*Norman v. Reed*, 502 U.S. 279 (1992)................................................ 5, 6, 7

**Statutes**

Fla. Stat. § 103.021 ............................................................................... 10

Fla. Stat. § 97.021 ................................................................................... 8

# ARGUMENT

This reply addresses two related issues from Defendant-Appellee Laurel M. Lee's ("Lee") primary contentions set forth in her Answer Brief. First, Lee relies on the unprecedented concept that a State can require a modicum of *national* support in lieu of any in-state support before putting a name on a statewide ballot. Second, Lee fails to address, much less distinguish, *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979), which is the key case that holds an otherwise constitutional ballot-access statute could be unconstitutional when considered in relation to other ballot-access statutes which evidence public policy decisions that undermine the stated justifications for the challenged statute. All other Lee's other contentions are adequately addressed in Plaintiffs-Appellants' Opening Brief.

**I. No Court has Ever Upheld a Ballot-Access Statute for a Statewide Election Based on the Measure of a Party's or Candidate's National Level of Support in Lieu of Requiring any Showing of a Modicum of Support Within the State.**

Lee's justification for the affiliation statute is a novel misapplication of the reference to presidential elections found in Supreme Court jurisprudence considering ballot-access restrictions on state ballots. It is

1

true that the Supreme Court has held that States have a lesser interest in regulating presidential elections than wholly in-state elections. Importantly, the many courts considering ballot-access statutes in a number of different contexts all have one thing in common: namely, they considered whether the modicum of support *within the state or election district* required by the State for ballot access was constitutional. No State, until now, has ever sought to justify ballot access by requiring some modicum of national support i.e. support that could come *solely* from outside of the state.

The Supreme Court held "the State has a less important interest in regulating Presidential elections than statewide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries." *Anderson v. Celebrezze*, 460 U.S. 780, 795 (1983). This ruling recognizes each State's role in our federal system's presidential election. The Supreme Court recognizes that each state plays only one part of the whole in presidential elections and it is therefore more difficult for a State to justify a ballot access restriction that keeps a candidate or party off the ballot than might be otherwise justified in an election occurring wholly within the state.

The *Anderson* holding was not intended to upend the long-standing rule that States are allowed to require a showing of a modicum of support *within* the state or election district at issue. As the Supreme Court held three years after *Anderson* was decided: "[I]t is now clear that States may condition access to the general election ballot by a minor-party or independent candidate upon a showing of a modicum of support *among the potential voters for the office.*" *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986). And here at base, the voters in Florida will be voting to send Florida Electors to the Electoral College.

The Plaintiff Parties have been unable to find any case that upheld a ballot access restriction that allowed a modicum of national support to displace the need to make a similar showing of in-state support. This Circuit, in particular, has never cited to the *Munro* quote set forth immediately above. An analysis of all of the Circuits that have cited to this aspect of *Munro* also reveals no case recognizing or upholding a State's election regulation by allowing proof of some modicum of national support before allowing a candidate on a state ballot in a presidential election.

3

The closest federal circuit court case involving a similar situation is found at *Libertarian Party of Maine v. Diamond*, 992 F.2d 365 (1st Cir. 1993) which, although not controlling authority, persuasively comes down in the Plaintiff Parties' favor. In *Libertarian Party*, seventeen potential candidates, running for various offices around the state, all sought to do so under the Libertarian Party name. *Id.* at 367. At the time, new political parties in Maine could organize as a minor political party "on the 'coattails' of a prior independent candidate for [Governor or President]" in lieu of circulating a statewide petition. *Id.* If the independent candidate obtained 5% of the vote in the general election, and then consents to affiliate with the new party, the new party avoided the signature-petition method of becoming a minor political party. *Id.*

The candidates for various in-state offices were unable to obtain general election ballot access despite the Libertarian Party's qualification as a minor political party. Maine law required that the candidates either meet a signature petition requirement or get a certain number of write-in votes at the primary election to qualify for the general election ballot. *Id.* at 368. The Libertarian Party and its in-state candidates argued "that these additional requirements are unnecessary

4

and unconstitutionally burdensome, since the [Libertarian] Party has already qualified . . . as an organization possessing 'statewide support.'" *Id*. at 370.

The First Circuit rejected that finding, and the analysis is relevant to the issue we have in this case:

> The [Libertarian] Party argues that its qualification as a political party under the § 302 "coattail" provision was enough to demonstrate "substantial support" among the Maine electorate. We do not agree. By choosing to qualify under the "coattail" provision, the Party *bypassed* the requirement of mustering significant numerical support **among eligible voters**, rather than *demonstrating* its capacity to do so.

*Id*. at 371 (italics emphasis in original, bold emphasis added). The First Circuit went on to analyze a 1992 Supreme Court case that held that a State has a "*separate*, and *additional*, interest in ascertaining that a political party which nominates candidates for office in an electoral subdivision of a larger political unit demonstrate support in the *particular electoral subdivision* for which the candidate is nominated." *Id*. at 372 (emphasis in original) (citing *Norman v. Reed*, 502 U.S. 279, 295 (1992)).

The *Norman* case is also important to this analysis. *Norman* originated in Illinois and, just like *Socialist Workers Party* discussed

5

below, involved the ballot access requirements in Cook County, Illinois (where Chicago is located). The case involved county candidates that wanted to run for local office under the name of a new political party, one which was only qualified in the City of Chicago but not Cook County. *Norman*, 502 U.S. at 282-83.[1] Under the Illinois system, if a new political party does not qualify statewide, it must qualify in individual political subdivisions within the state. The Court explained how Illinois law was set up: "A political party that has not engaged in a statewide election, however, can be 'established' only in a political subdivision where it has fielded candidates. A party is not established in Cook County, for example, merely because it has fared well in Chicago's municipal elections." *Id*. at 283.

Certain candidates intended to run in suburban districts, outside the City of Chicago where the new political party had not yet been established. The Supreme Court held that riding those coattails was not

---

[1] The signature requirements to get on the ballot in the City of Chicago or in Cook County were identical at 25,000 signatures, and hence the argument was that if a party qualified in the City of Chicago, they effectively qualified in the larger Cook County. But the state law also required that to qualify for ballot access in the two separate county districts, 25,000 signatures had to be gathered from each of those two districts as well. *Norman*, 502 U.S. at 284.

allowed: "Just as the State may not cite the Party's failure in the suburbs as a reason for disqualifying its candidates in urban Cook County, neither may the Party cite its success in the city district as a sufficient condition for running candidates in the suburbs." *Id.* at 295.

This set up is analogous to the situation presented in this appeal. The State of Florida wants to use a party's success nationally as a sufficient condition for running candidates in Florida without *any* showing of a modicum of support in Florida. This is contrary to the Supreme Court's decision in *Norman* and the First Circuit's persuasive authority in *Libertarian Party*, both of which establish that there is no correlation to be relied on between support established in a larger political unit and support to be assumed in a political subdivision of that unit.

Both *Norman* and *Libertarian Party* stand for the proposition that establishing support for a party and even running candidates in a larger political district does not mean that the party has established a sufficient modicum of support in smaller subdivisions within that district. *Libertarian Party*, 992 F.2d at 372; *Norman*, 502 U.S. at 295. In this appeal, the state is using evidence of a modicum of support in the

7

largest political unit in the country – the entire nation – to supplant the need to make a showing of support in a smaller political subdivision – Florida. Because the Supreme Court and the First Circuit persuasively conclude that there is no logical correlation between support in a large electoral unit and support in a political subdivision, Florida's decision to rely on a modicum of national support absolutely implicates constitutional burdens the Plaintiff Parties face here.

Florida has in effect made a public policy determination that minor political parties can access the ballot *without* establishing a modicum of local support. Consequently, the State cannot justify the extremely onerous 132,000+ signature-petition campaign to get ballot access for some minor political parties that don't associate with certain nationally recognized parties.[2]

---

[2] It should be noted that even the Democrats and Republicans have to establish a modicum of Florida support for ballot access in Florida. All political parties that are not minor political parties as that term is defined at Fla. Stat. § 97.021(19) choose their candidates by presidential primary election. Democrats and Republicans, by virtue of the fact that at least 5% of the registered voters of the state have registered with these parties, establish a sufficient modicum of support through the sheer number of their statewide voter registrations.

8

## II. The Answering Brief Fails to Address the Key Supreme Court *Socialist Workers Party* Decision that Struck Down a Ballot-Access Requirement Because it could not be Justified After Considering the Whole of the State's Election Law Schema and the Public Policy Determinations Made by the Legislature When it Passed that Election Code.

*Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979) is one of the most important cases cited in the Plaintiff Parties' Opening Brief. Tellingly, the Answering Brief failed to address it. The case is all the more important when considering *Libertarian Party* and *Norman* discussed in Part I, *supra*.

*Socialist Workers Party* is an Equal Protection case just like this one. The Supreme Court articulated how such analysis is done:

> In determining whether the Illinois signature requirements for new parties and independent candidates as applied in the city of Chicago violate the Equal Protection Clause, we must examine the character of the classification in question, the importance of the individual interests at state, and the state interests asserted in support of the classification.

*Id*. at 183.

The Court then identified that the character of the classification was geographic. *Id*. In this case, the character of the classification turns on whether the minor political party associates with a federal party that is

9

recognized by the FEC as a national committee. Fla. Stat. § 103.021(4)(a).

*Socialist Workers Party* ultimately turned on State's failure to adequately justify the need for the ballot access restriction in light of the public policy choices made by the Illinois Legislature: "The Illinois Legislature has determined that its interest in avoiding overloaded ballots in statewide elections is served by the 25,000-signature requirement. Yet [the State of Illinois] has advanced no reason, much less a compelling one, why the State needs a more stringent requirement for Chicago." *Socialist Workers Party*, 440 U.S. at 186. Similarly, Florida's Legislature here determined that, to avoid an overloaded or unwieldy ballot, it is not necessary to require any showing of a modicum of support within the State of Florida before accessing the Florida ballot. Based on the analysis of *Norman* and *Libertarian Party*, it is also insufficient to substitute national support with in-state support because those cases held that there is no logical correlation between a showing of support in a larger political unit and a showing of support in a smaller subdivision. Therefore, the State has failed to articulate any good reason to justify the disparate ballot access

10

requirements, and in particular, the heavy burden of requiring over 132,000 signatures to access the ballot. Therefore, the Plaintiff Parties' constitutional rights to vote, speak, and associate for political purposes are severely burdened and violated solely on the basis of who they associate with.

For these reasons and for the reasons set forth in the Opening Brief, the Plaintiff Parties' Appeal should be resolved by reversing the District Court's Order denying the motion for preliminary injunction and ordering Laurel M. Lee to allow the Plaintiff Parties to submit the names of their candidates for President and Vice President and to submit the names of their Electors by certification by the Plaintiff Parties' respective chairmen, just as all other minor political parties are allowed to do.

Dated at Austin, Texas, on this the 17th day of July, 2020.

        Respectfully submitted,
        THE BERNHOFT LAW FIRM, S.C.
        Attorneys for Plaintiffs-Appellants


        /s/ Daniel J. Treuden
        Daniel J. Treuden

        The Bernhoft Law Firm, S.C.
        1402 E. Cesar Chavez Street
        Austin, Texas 78702
        Telephone: (512) 582-2100
        Facsimile:  (512) 373-3159
        djtreuden@bernhoftlaw.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 2,262 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in proportional spaced typeface in Century Schoolbook font, 14-point for text and 14-point for footnotes.

 /s/ Daniel J. Treuden
Daniel J. Treuden, Esquire
Counsel for Plaintiffs-Appellants

Dated:  July 17, 2020

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was sent to the parties by electronic filing:

Ashley E. Davis
Bradley R. McVay


Dated: July 17, 2020

                                        /s/ Daniel J. Treuden
                                        Daniel J. Treuden, Esquire